Case No. 23-10682-H

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

DONALD F. JOHNSON,
Plaintiff-Appellant,

v.

UNITED STATES CONGRESS,
Defendant-Appellee.

---

Appeal from the United States District Court
for the Middle District of Florida
Case No. 6:22-cv-00504-WWB-DAB

## **Reply Brief of Appellant**

Patrick C. Fagan
Jeffrey W. Chen
BONDURANT MIXSON & ELMORE, LLP
1201 W Peachtree St NW, Ste 3900
Atlanta, GA 30309

*Attorney for Plaintiff-Appellant Donald F. Johnson*

#5106812v1

Case No. 23-10682
*Donald F. Johnson v. United States Congress*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Plaintiff-Appellant Donald F. Johnson certify that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations (including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party) that have an interest in the outcome of this particular case or appeal:

- Baker, David A., U.S. Magistrate Judge

- Berger, Wendy W., U.S. District Judge

- Boynton, Brian M.*

- Handberg, Roger B.*

- Bremer, Celeste F., U.S. Magistrate Judge

- Chen, Jeffrey W., Court-appointed counsel for Appellant

- Fagan, Patrick C., Court-appointed counsel for Appellant

- Irick, Daniel C., U.S. Magistrate Judge

- Kelly, Gregory J., U.S. Magistrate Judge

C-1

- Johnson, Donald F.

- Lopez, Caroline D.*

- Scarborough, Charles W.*

- United States Congress

- United States Department of Veterans Affairs

*Additional parties not previously listed.

### Corporate Disclosure Statement

Pursuant to 11th Cir. R. 26.1-3(b), Counsel for Plaintiff-Appellant Donald F. Johnson certify no publicly traded company or corporation has an interest in the outcome of this case.

C-2

## STATEMENT REGARDING ORAL ARGUMENT

The government does not believe oral argument is necessary in this appointed-counsel case because, in its view, the case should be dismissed for lack of jurisdiction under 38 U.S.C. § 511(a). But as explained below, the plain text of § 511(a) forecloses the government's jurisdictional argument. Moreover, Johnson respectfully submits that oral argument would be useful to the Court for purposes of resolving the jurisdictional issue. Oral argument will also be helpful to the Court in deciding constitutional issues regarding service-connected disability compensation that this Court has not addressed.

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

ARGUMENT ...........................................................................................1

    I.    The district court had jurisdiction over Johnson's facial
        constitutional challenges to 38 U.S.C. § 5313 ....................................1

        A.    The Supreme Court held that § 511(a)'s predecessor did
               not preclude district courts from deciding facial
               constitutional challenges to statutes............................................2

        B.    District courts have jurisdiction under § 511(a) to
               adjudicate facial attacks on statutes because the VJRA
               did not change the operative language........................................3

        C.    Other decisions interpreting § 511(a) confirm that the
               district court had jurisdiction to decide Johnson's claims..........9

        D.    The government mischaracterizes this Court's precedent........12

        E.    The government's reliance on legislative history is
               unavailing................................................................................14

    II.    Johnson's constitutional claims have arguable merit.........................17

        A.    Johnson's bill-of-attainder claim has arguable merit...............18

        B.    Johnson's equal-protection claim has arguable merit...............24

            i.    The government cannot dispute Johnson's
                   arguments grounded in Supreme Court precedent .........24

            ii.    The government's other arguments do not nullify
                   the arguable merit here ...................................................26

#5106812v1

# TABLE OF AUTHORITIES

<u>**Cases**</u>:

*Andujar v. Bowen*,
    802 F.2d 404, 405 (11th Cir. 1986) ..............................................................27

*Artway v. Att'y Gen. of N.J.*,
    81 F.3d 1235 (3d Cir. 1996) .........................................................................22

*Bates v. Nicholson*,
    398 F.3d 1355 (Fed. Cir. 2005) ....................................................................16

*Battle v. Central State Hosp.*,
    898 F.2d 126 (11th Cir. 1990) ......................................................................17

*Bilal v. Driver*,
    251 F.3d 1346 (11th Cir. 2001) ....................................................................17

*Broudy v. Mather,*
    460 F.3d 106 (D.C. Cir. 2006).......................................................... 10-11, 21

*Buccheri-Bianca v. Heckler*,
    768 F.2d 1152 (10th Cir. 1985) .....................................................................27

*Clark v. Riley*,
    595 F.3d 1258 (11th Cir. 2010) ....................................................................28

*Consol. Edison Co. of N.Y., Inc. v. Pataki*,
    292 F.3d 338 (2d Cir. 2002) ...................................................................19, 21

*Dacoron v. Brown*,
    4 Vet.App. 115 (1993)..................................................................... 4-6, 10, 16

*Davis v. Bowen*,
    825 F.2d 799 (4th Cir. 1987) ........................................................................22

*Disabled American Veterans v. Department of Veterans Affairs*,
    962 F.2d 136 (2d Cir. 1992) ...........................................................................6

#5106812v1

*Edwards v. Prime, Inc.*,
    602 F.3d 1276 (11th Cir. 2010) ......................................................14

*Flemming v. Nestor,*
    363 U.S. 603 (1960)......................................................................21

*Foretich v. United States*,
    351 F.3d 1198 (D.C. Cir. 2003) ....................................................19

*Hall v. U.S. Dep't Veterans Affs.*,
    85 F.3d 532 (11th Cir. 1996) ...........................................7-8, 12-14

*Hall v. West,*
    217 F.3d 860, 1999 WL 1072252 (Fed. Cir. 1999).....................18-19, 25-26

*Hicks v. Veterans Administration*,
    961 F.2d 1367 (8th Cir. 1992) .............................................. 7-8, 11

*Hyland v. Parker*,
    163 F.App'x 793 (11th Cir. 2006)...................................................17

*Johnson v. Dep't of Veterans Affs.*,
    351 F.App'x 288 (10th Cir. 2009)..................................................13

*Johnson v. Robison*,
    415 U.S. 361 (1974)......................................... 2-3, 5-6, 10-11, 13-15

*Jones Bros., Inc. v. Sec'y of Labor*,
    898 F.3d 669 (6th Cir. 2018) .......................................................12

*Jones v. Gov. of Fla.*,
    975 F.3d 1016 (2020) ...................................................................28

*Larrabee by Jones v. Derwinski*,
    968 F.2d 1497 (2d Cir. 1992) ......................................................2, 4

*Latham v. Brown*,
    4 Vet.App. 265 (1993) ..................................................................20

iv

*Lewis v. Norton*,
    355 F.App'x 69 (7th Cir. 2009) .......................................................13

*Lynch v. United States,*
    292 U.S. 571 (1934).......................................................................26

*Nesbitt v. Candler Cty.*,
    945 F.3d 1355 (11th Cir. 2020) .....................................................14

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977).................................................................19, 21

*Plyler v. Doe*,
    457 U.S. 202 (1982)........................................................... 24-25, 28

*Prewitt v. McDonough*,
    633 F.Supp.3d 195 (D.D.C. 2022).............................1-3, 5, 7-8, 15

*Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*,
    468 U.S. 841 (1984)................................................................. 18-19

*Smith v. United States*,
    7 F.4th 963 (11th Cir. 2021) ................................................. 1, 9-14

*Sultenfuss v. Snow*,
    894 F.2d 1277 (11th Cir. 1990) .....................................................17

*Title Redacted by Agency*,
    2000 WL 34398031 (Bd.Vet.App. Jan. 13, 2000) ........................15

*Title Redacted by Agency*,
    2011 WL 7042216 (Bd.Vet.App. Nov. 4, 2011) .....................11, 15

*Title Redacted by Agency*,
    2021 WL 3918787 (Bd.Vet.App. July 19, 2021) ..........................15

*Traynor v. Turnage*,
    485 U.S. 535 (1988)......................................................... 3, 14-15

#5106812v1

*U.S. Dep't of Agriculture v. Moreno*,
413 U.S. 528 (1973)..........................................................................24-25, 27

*United States v. Brown*,
381 U.S. 437 (1965).........................................................................21

*United States v. Lovett,*
328 U.S. 303 (1946).........................................................................22

*United States v. Shamsid-Deen*,
61 F.4th 935 (11th Cir. 2023) .........................................................14

*United States v. Tagg*,
572 F.3d 1320 (11th Cir. 2009) ......................................................17

*Veterans for Common Sense v. Shinseki*,
678 F.3d 1013 (9th Cir. 2012) ........................................................10

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000)..................................................................24-25

*Wanless v. Veterans Administration*,
70 F.3d 123, 1995 WL 681471 (10th Cir. 1995)............................8

*Washington v. Glucksberg*,
521 U.S. 702 (1997)..................................................................24-25

*Webster v. Fall*,
266 U.S. 507 (1925).........................................................................26

*Wiley v. Bowen,*
824 F.2d 1120 (D.C. Cir. 1987)................................................22-23

*Williamson v. Lee Optical of Okla.*,
348 U.S. 483 (1955).........................................................................28

*Zipkin v. Heckler,*
790 F.2d 16 (2d Cir. 1986) .............................................................27

#5106812v1

*Zuspann v. Brown,*
    60 F.3d 1156 (5th Cir. 1995) ........................................................................ 6-7


**Statutes and Regulations**:

38 C.F.R. § 3.665 ...............................................................................................9

38 U.S.C. § 211(a) ................................................................................. 2-6, 15

38 U.S.C. § 502 ............................................................................................12, 14

38 U.S.C. § 511(a) ................................................................................... i, 1-16

38 U.S.C. § 5313 .......................................... i, 1, 8-11, 18-24, 26, 28-29

42 U.S.C. § 402(x) ..................................................................................... 22-23


**Other**:

H.R. Rep. No. 100-963 ..................................................................... 15-16

*Review of Compensation and DIC Programs: Hearings Before the Subcomm.
on Comp., Pension, Ins., & Mem'l Aff., H. Comm. on Veterans' Aff.,*
    96th Cong. 26 (1980)...................................................................................20

#5106812v1

**ARGUMENT**

The government has now voluntarily appeared and responded in this PLRA frivolity appeal, primarily attacking jurisdiction. But the text of 38 U.S.C. § 511(a)—and the weight of authority—support jurisdiction over Johnson's facial constitutional challenges to 38 U.S.C. § 5313.

The government also fails to nullify Johnson's showing that the purportedly nonpunitive, rational justifications for § 5313 are untenable. Because Johnson's claims are arguable—even plausible—this Court should reverse and remand.

**I.     The district court had jurisdiction over Johnson's facial constitutional challenges to 38 U.S.C. § 5313.**

The government contends that 38 U.S.C. § 511(a) bars jurisdiction over Johnson's facial challenges to § 5313. The plain text of § 511(a) tells a different story.

Under that language, "the trigger for § 511(a)'s preclusion of jurisdiction is still a 'decision *of the Secretary*.'" *Prewitt v. McDonough*, 633 F.Supp.3d 195, 203 (D.D.C. 2022) (emphasis added) (quoting 38 U.S.C. § 511(a)). Stated differently, § 511(a) applies only when a plaintiff challenges a "benefits determination *by the Secretary*" or a "decision made *by the Secretary* in the course of making a benefits determination." *Smith v. United States*, 7 F.4th 963, 985 (11th Cir. 2021) (emphases added, cleaned up and quotation omitted).

"Facial challenges" to statutes, however, are "challenges to decisions *of Congress*, not to decisions rendered by the Secretary." *Prewitt*, 633 F.Supp.3d at 203 (emphasis added) (citing *Johnson v. Robison*, 415 U.S. 361, 367 (1974)). Courts have therefore consistently held that facial constitutional challenges to veterans-benefits statutes fall outside the preclusive scope of § 511(a). This Court has never held otherwise.

### A.   The Supreme Court held that § 511(a)'s predecessor did not preclude district courts from deciding facial constitutional challenges to statutes.

The text of § 511(a)'s predecessor—§ 211(a)—was "substantially similar to current section 511(a)." *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1500 (2d Cir. 1992). It provided that

> the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision….

38 U.S.C. § 211(a) (1970).

In *Johnson v. Robison*, the Supreme Court construed § 211(a) in the context of a constitutional challenge to statutes excluding conscientious objectors from benefits. 415 U.S. at 362-63. The Court held that "[p]lainly, no explicit provision of § 211(a) bars judicial consideration of appellee's constitutional claims." *Id.* at 367. It explained that: (1) § 211(a) precluded courts from reviewing "decisions of the

2

Administrator" made "under" any law administered by the VA; and (2) the claims at issue required no such review because they challenged decisions *of Congress* arising under *the Constitution*:

> A decision of law or fact 'under' a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts[.] **Appellee's constitutional challenge is not to any such decision of the Administrator, but rather to a decision of Congress to create a statutory class** entitled to benefits that does not include I—O conscientious objectors…**Thus, as the District Court stated: The questions of law presented in these proceedings arise under the Constitution, not under the statute whose validity is challenged.**

*Id.* (bolding added) (quotation omitted).

*Johnson* included dictum about considering whether a construction that avoids constitutional questions "is fairly possible." *Id.* at 366-67. But "despite this dictum," *Johnson* "did not ultimately rest on principles of constitutional avoidance." *Prewitt*, 633 F.Supp.3d at 203. Instead, *Johnson* held that "a construction of [§] 211(a) that does not extend the prohibitions of that section to actions challenging the constitutionality of laws providing benefits for veterans *is not only 'fairly possible' but is the most reasonable construction*." 415 U.S. at 373 (emphasis added).

**B.    District courts have jurisdiction under § 511(a) to adjudicate facial attacks on statutes because the VJRA did not change the operative language.**

After several decisions extended *Johnson*'s reasoning to other kinds of claims, *see, e.g.*, *Traynor v. Turnage*, 485 U.S. 535 (1988), Congress amended § 211(a) in

1988 via the VJRA. The amended text—later relocated to 38 U.S.C. § 511(a)—now says:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court....

*Id*.

Thus, although the VJRA created the review scheme the government contends is the exclusive channel for even facial attacks on legislation, it made only minor changes to § 211(a)'s text. Courts have observed that § 211(a) and § 511(a) are "substantially similar"[1]—indeed, "virtually identical." *Dacoron v. Brown*, 4 Vet.App. 115, 118 (1993). Even the government admits that § 511(a) is "similar to…Section 211(a)." Gov't Br. 17 n.3.

To be sure, the VJRA broadened the range of covered VA decisions. While § 211(a) covered decisions under laws "administered by the [VA] providing benefits," 38 U.S.C. § 211(a) (1970), § 511(a) now covers all VA decisions made under any "law that *affects* the provision of benefits by the [VA] Secretary." 38 U.S.C. § 511(a) (emphasis added).

---

[1] *Larrabee*, 968 F.2d at 1500.

But the VJRA made no meaningful changes to the statutory text that drove the Supreme Court's holding in *Johnson*. Both § 211(a) and § 511(a) preclude jurisdiction *only* over challenges to "decision[s] of the Administrator" or "Secretary" "under" laws relating to the VA's provision of benefits. *Compare* 38 U.S.C. § 211(a) (1970), *with* 38 U.S.C. § 511(a).

Consequently, "the most reasonable construction" of § 511(a) remains that district courts retain jurisdiction over facial constitutional attacks on statutes. *Johnson*, 415 U.S. at 373. Thus, "[i]n the years since the VJRA was enacted," "the line that *Johnson* drew between facial constitutional challenges to legislation that may be brought in the federal district court and as-applied challenges to benefits determinations that may not has endured." *Prewitt*, 633 F.Supp.3d at 202-03 (collecting cases).

*Dacoron* is a telling example. In *Dacoron*, a veteran's widow brought a mandamus petition challenging, *inter alia*, the constitutionality of a benefits statute. 4 Vet.App. at 117. Mandamus required the widow to show she lacked "adequate alternative means of obtaining the relief sought." *Id.*

The Court of Appeals for Veterans Claims ("CAVC") held that the widow *did* have adequate alternative means of obtaining relief because she "remain[ed] free to bring a challenge to the constitutionality of a statute in U.S. district court." *Id.* at 119. The CAVC quoted *Johnson* and concluded that "nothing in the VJRA or in the

5

current [§ 511(a)] changes [*Johnson*'s] analysis" of this issue. *Id.* The CAVC further explained that "[a] claim which alleges only the unconstitutionality of a statute" is "beyond the purview of section 511(a)" because it "is not a claim 'under a law that affects the provision of benefits by the Secretary'…but rather is a claim under the Constitution." *Id.*

Notably, *Dacoron* is a decision from the very court that was *created by the VJRA* to be part of the review scheme that the government insists has exclusive jurisdiction over facial challenges to statutes. In other words, while the government urges that Johnson "cannot sidestep the [VJRA's] scheme of review" by asserting his facial claims in district court, the appellate tribunal within that very "scheme" has held otherwise. Gov't Br. 22.

*Dacoron* is just one of many examples. In *Disabled American Veterans v. Department of Veterans Affairs*, after quoting the amended § 211(a)'s "'decision of the Secretary'" language, the Second Circuit held that the claims at issue could proceed in district court because they "challenge[d]" only "the constitutionality of a statutory classification drawn *by Congress*," rather than any denials by the Secretary. 962 F.2d 136, 141 (2d Cir. 1992) (emphasis added and alterations adopted) (quoting 38 U.S.C. § 211(a) (1988)).

The Fifth Circuit applied the same distinction in *Zuspann v. Brown*: "To determine whether the district court correctly dismissed this case under § 511(a), we

6

ask one question: whether the plaintiff is alleging a facial attack on the constitutionality of *an act of Congress*, or whether the plaintiff is challenging *the VA's decision to deny him benefits*. If Zuspann makes a facial challenge to a statute, then the district court has jurisdiction to hear his case." 60 F.3d 1156, 1158 (5th Cir. 1995) (emphases added).

Most recently, in *Prewitt*, the District of D.C. ("D.D.C.") observed that "the trigger for § 511(a)'s preclusion of jurisdiction is still a 'decision of the Secretary.'" 633 F.Supp.3d at 203 (quoting 38 U.S.C. § 511(a)). The D.D.C. therefore ruled that § 511(a) did *not* preclude its jurisdiction because "facial challenges are still challenges to decisions of Congress, not to decisions rendered by the Secretary." *Id.*

The government mistakenly claims that the Eighth Circuit "held [in *Hicks v. Veterans Administration*, 961 F.2d 1367 (8th Cir. 1992)] that the VJRA divests district courts of jurisdiction over facial constitutional challenges to veterans benefits statutes." Gov't Br. 25. "*Hicks* did not involve a facial constitutional attack" on any statute. *Hall v. U.S. Dep't Veterans Affs.*, 85 F.3d 532, 534-35 (11th Cir. 1996). Instead, *Hicks* addressed a claim that *the VA* reduced the plaintiff's benefits "in retaliation for having exercised his First Amendment rights." *Id.*; *see Hicks*, 961 F.2d at 1368 (Hicks alleged VA "retaliation for" complaints about treatment).

Thus, although *Hicks* held that § 511(a) divests jurisdiction over "constitutional claims" attacking VA benefits decisions, 961 F.2d at 1369, it could

7

not address whether *facial* constitutional attacks on statutes fall within § 511(a)'s scope. And that is "the relevant divide" under § 511(a)'s language: while constitutional (and other) challenges to VA benefits decisions must be raised in the VJRA's scheme, "courts may exercise jurisdiction over facial attacks on statutory provisions, because adjudicating such claims does not require courts to inquire into or pass judgment on VA decisions." *Prewitt*, 633 F.Supp.3d at 204.

The *only* contrary decision is *Wanless v. Veterans Administration*, 70 F.3d 123, 1995 WL 681471 (10th Cir. 1995). But that unpublished opinion isn't even binding within its own circuit, much less here. Additionally, *Wanless*'s entire jurisdictional discussion spans a single sentence that (curiously) follows a ruling on the merits. *See id.* at *1-2. And *Wanless* doesn't even *cite*—let alone construe— § 511(a); its jurisdictional one-liner merely cites *Hicks*, which did not involve any facial claims. *Wanless* is hardly instructive.

In sum, even after the VJRA, district courts retain jurisdiction to decide facial constitutional attacks on statutes. There is no question that Johnson's claims are facial attacks on § 5313. The only defendant Johnson named is *Congress*—not the VA or any VA officials. And Johnson does not take issue with any VA decisions; Johnson's grievances are directed solely at *Congress*'s enactment of § 5313. DE1; DE6 at 2-6. The government obliquely asserts that Johnson "only has a concrete injury sufficient for Article III standing to raise this challenge because the VA has

8

applied 38 U.S.C. § 5313 and 38 C.F.R. § 3.665 to reduce his disability benefits payments." Gov't Br. 21. It's unclear whether this argument is meant to dispute the facial nature of Johnson's claims, but regardless, the argument fails. Section 5313 is a statutory command, and the VA had no discretion not to apply it. Moreover, Johnson would have suffered no injury but for § 5313's enactment. Thus, Johnson can redress his injury by challenging *either* (1) the VA's application of § 5313 to him; or (2) Congress's enactment of § 5313 itself. Johnson challenges only the latter. The VA's application of § 5313 to Johnson is not the "only" redressable cause of his injury. *Id.*

### C.  Other decisions interpreting § 511(a) confirm that the district court had jurisdiction to decide Johnson's claims.

Appellate decisions construing § 511(a) in other contexts further demonstrate that Johnson's claims fall outside § 511(a)'s scope.

In *Smith*, this Court construed § 511(a) as precluding district-court review "of *decisions made by the Secretary* in the course of making a benefits determination." 7 F.4th at 985 (emphasis added). Accordingly, this Court held that § 511(a) did not preclude judicial review of claims that certain VA personnel breached the standard of medical care. *Id.* at 986-87.

Likewise, in concluding that § 511(a) did not preclude a due-process challenge to allegedly inadequate claims-handling procedures, the Ninth Circuit explained "that § 511 precludes jurisdiction over a claim if it requires the district

court to review *VA decisions* that relate to benefits decisions, including any decision made *by the Secretary* in the course of making benefits determinations." *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025, 1034 (9th Cir. 2012) (emphases added) (quotations omitted). And the D.C. Circuit applied a similar test in *Broudy v. Mather*: whether a claim would require a court "to determine whether *the VA* acted properly in handling" a benefits request. 460 F.3d 106, 114-15 (D.C. Cir. 2006) (emphasis added) (quotation omitted).

Under those tests, Johnson's claims fall outside § 511(a). Johnson does not attack any "decisions made by the Secretary"—only Congressional decisions. *Smith*, 7 F.4th at 985. Nor do his claims require any court "to determine whether the VA acted properly in handling" any benefits request; Johnson alleges impropriety by Congress only. *Broudy*, 460 F.3d at 115 (quotation omitted).

These appellate decisions also confirm that the constitutionality of § 5313 is not a "question[] of law" that was "necessary to" Johnson's compensation reduction within the meaning of § 511(a). As a threshold matter, the facial constitutionality of a statute is a question that arises purely "under" *the Constitution*—not a "law that affects the provision of benefits by the Secretary." 38 U.S.C. § 511(a); *see Johnson*, 415 U.S. at 367; *Dacoron*, 4 Vet.App. at 119.

Regardless, this Court has construed § 511(a)'s "necessary to" language as precluding judicial review only of "decision[s] made by the Secretary in the course

of making a benefits determination." *Smith*, 7 F.4th at 985 (cleaned up and quotation omitted). Stated differently, "district courts have jurisdiction to consider questions…as long as the Secretary has not *actually decided* them in the course of a benefits proceeding." *Broudy*, 460 F.3d at 114 (emphasis added).

Here, the VA did not "actually decide[]" the constitutionality of § 5313 when reducing Johnson's compensation. *Id.* "No one argues that [that question] w[as] briefed and argued before the Secretary," "[n]or does anyone argue that the Secretary explicitly considered [it] when he" reduced Johnson's compensation. *Id.* "It can therefore hardly be said that th[is] issue[]" was "'necessary to a decision by the Secretary.'" *Id.* at 115 (quoting 38 U.S.C. § 511(a)); *see id.* at 114-15 (rejecting assertion that "the Secretary *should be deemed* to have decided all issues that could have affected the outcome of the underlying benefits proceeding, even if those issues were not explicitly raised before him").

Indeed, the Secretary likely *couldn't have* decided § 5313's constitutionality even if Johnson had raised it in administrative proceedings. Since before *Johnson*, the Board of Veterans' Appeals ("BVA")—which renders "the final decision[s] of the Secretary"[2]—has consistently "disclaimed authority to decide constitutional questions." *Johnson*, 415 U.S. at 368; *see, e.g.*, *(Title Redacted by Agency)*, 2011 WL 7042216, at *4 (Bd.Vet.App. Nov. 4, 2011) (constitutional challenges to § 5313

---

[2] *Hicks*, 961 F.2d at 1369.

#5106812v1

"exceed the jurisdiction of the Board"); *see also Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 673 (6th Cir. 2018) ("This administrative agency, like all administrative agencies, has no authority to entertain a facial constitutional challenge to the validity of a law." (collecting cases)).

### D.   The government mischaracterizes this Court's precedent.

Citing *Hall* and *Smith*, the government suggests that this Court has already "recogni[zed]" § 511(a) precludes district courts from "consider[ing] 'facial' challenges to veterans benefits statutes." Gov't Br. 25; *see id.* at 19-20 (similar). Not so. Neither *Hall* nor *Smith* involved a facial challenge to any statute.

*Hall* addressed a challenge to *a regulation*. *See* 85 F.3d at 535 (plaintiff "did not specify that a statute was under constitutional attack"). While statutes are congressional actions, regulations are decisions *by the Secretary*. Moreover, challenges to regulations are governed by a *different* VJRA provision—38 U.S.C. § 502—which mandates that review of "regulations promulgated by the Secretary…'may be sought only in the…Federal Circuit.'" *Hall*, 85 F.3d at 533 n.3 (quoting § 502). *Hall* therefore straightforwardly concluded that the plaintiff's regulatory challenge could be raised only in the Federal Circuit or the VJRA's

#5106812v1

review scheme. *Id.* at 535. But *Hall*'s holding has no bearing here, where Johnson challenges *a statute*.[3]

Although *Hall* remarked in dicta that it was "debatable" whether *Johnson*'s holding regarding challenges to statutes "remains good law after the VJRA," the Court expressly declined to decide that issue because the plaintiff challenged only a regulation. 85 F.3d at 535. And as explained above, because the VJRA did not change § 511(a)'s focus on decisions "by the Secretary" "under" laws relating to the VA's provision of benefits, "a construction of § [5]11(a) that does not extend" to facial attacks on statutes remains "the most reasonable construction." *Johnson*, 415 U.S. at 373.

*Smith* is even further afield. *Smith* involved claims of (1) negligence by VA personnel in authorizing and scheduling treatment (which fell within § 511(a)'s scope); and (2) malpractice by VA medical personnel (which did not). *See* 7 F.4th at 985-88. And *Smith* construed § 511(a) as precluding district-court review of "decisions made *by the Secretary* in the course of making a benefits determination." *Id.* at 985 (emphasis added). Under that interpretation, Johnson's challenges to a *Congressional* act fall outside § 511(a).

---

[3] *Lewis v. Norton*, 355 F.App'x 69 (7th Cir. 2009) and *Johnson v. Dep't of Veterans Affs.*, 351 F.App'x 288 (10th Cir. 2009) (cited by Gov't Br. 20) are inapposite for the same reason: those cases concerned challenges to regulations, not statutes.

13

The government relies not on *Smith*'s construction of § 511(a), but rather on its characterization of *Hall* as "a clear example of a case over which a federal court lacks jurisdiction under the VJRA: a challenge to the constitutionality *of a statute*." *Id.* at 976 (emphasis added) (quoted in Gov't Br. 4, 20). But again, *Hall* involved a challenge to *a regulation*—not a statute. And a challenge to *a regulation* is indeed "a clear example" of where district courts "lack jurisdiction under the VJRA"— particularly under § 502. *Id.* That, however, says nothing about whether a challenge to *legislation* falls under *§ 511(a)*. Regardless, *Smith*'s characterization of *Hall* was dicta that was not "necessary to [*Smith*'s] result." *United States v. Shamsid-Deen*, 61 F.4th 935, 949 n.1 (11th Cir. 2023). *Smith* distinguished *Hall* as inapposite simply because "there was no medical negligence claim in *Hall*." *Smith*, 7 F.4th at 976. *Smith*'s additional characterizations of *Hall*, therefore, are well "beyond the facts of" *Smith*. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010).

### E.     The government's reliance on legislative history is unavailing.

To circumvent § 511(a)'s plain language, the government invokes legislative history. Gov't Br. 16-18. That, of course, is futile. Courts cannot "use legislative history to get around the plain meaning of a statute's text." *Nesbitt v. Candler Cty.*, 945 F.3d 1355, 1361 (11th Cir. 2020).

Moreover, the government misspeaks when it claims that the legislative history indicates "Congress sought to correct <u>both</u> *Johnson* and *Traynor*" through

14

the VJRA. Gov't Br. 17 (underlining added). In fact, "[t]he House Report" that the government cites "*repeatedly endorses Johnson* and favorably contrasts it with decisions that extended *Johnson*" like *Traynor*—which shows that "§ 511(a) was meant to displace the latter category of cases, *but not Johnson itself*." *Prewitt*, 633 F.Supp.3d at 203-04 (emphases added) (collecting citations); *see, e.g.*, H.R. Rep. No. 100-963, at 22 (quoted in Gov't Br. 16-17); *id.* at 19 ("[*Johnson*] properly decided that a decision not to provide benefits to conscientious objectors was a decision of the Congress, not of the Administrator, and the Court was free to examine the constitutionality of Congress' decisions…[*Johnson*'s] holding that section 211(a) was inapplicable to Robison's action seems clearly correct.").[4]

The government also highlights portions of legislative history expressing a desire to avoid conflicting rulings among different courts, and even hints that the VA might defy an adverse ruling from this Court because it is "bound to follow

---

[4] In a footnote, the government quotes language stating that "'if a veteran alleges that a statute is unconstitutional,'" "'the Administrator must take a position with respect to such a contention if it is necessary to a decision in a case.'" Gov't Br. 17 n.3 (quoting H.R. Rep. No. 100-963, at 27). But despite this language, the Secretary (through the BVA) has consistently *refused* to decide constitutional challenges to statutes. *See, e.g.*, *(Title Redacted by Agency)*, 2011 WL 7042216, at *4; *(Title Redacted by Agency)*, 2021 WL 3918787, at *5 (Bd.Vet.App. July 19, 2021); *(Title Redacted by Agency)*, 2000 WL 34398031, at *2 (Bd.Vet.App. Jan. 13, 2000). In any event, this language merely recognizes that facial challenges "may be raised before the Secretary" if a claimant so chooses; "it says nothing about further cabining the jurisdiction of the courts." *Prewitt*, 633 F.Supp.3d at 204.

15

decisions by the CAVC and the Federal Circuit." Gov't Br. 17, 23. But if the VA is bound by the CAVC's decisions, then surely it must follow *Dacoron*'s holding that "a claimant remains free to bring a challenge to the constitutionality of a statute in U.S. district court." 4 Vet.App. at 119. In any event, because many courts have already held that district courts may decide facial challenges to veterans-benefits statutes, there is already an irreducible risk of conflicting decisions on any number of constitutional issues. Concerns about that already-present risk hardly justify departing from the plain meaning of § 511(a).

Allowing district courts to adjudicate facial attacks on legislation aligns with the purposes reflected in the VJRA's legislative history. To the extent Congress sought to curb "'increased involvement of the judiciary in technical VA decision-making,'" constitutional challenges to statutes implicate no such technical decision-making. Gov't Br. 16 (quoting H.R. Rep. No. 100-963, at 21). And "'district courts'" unquestionably possess "'the necessary expertise'" to adjudicate constitutional questions. *Id.* at 18 (quoting *Bates v. Nicholson*, 398 F.3d 1355, 1364 (Fed. Cir. 2005)).

In short, the government's legislative-history-based arguments are unconvincing, and could not override the plain meaning of § 511(a) in any event.

**II.    Johnson's constitutional claims have arguable merit.**

The parties agree that *de novo* review applies to Johnson's claims. The government attacks them "on purely legal grounds."[5] *See* Gov't Br. 28. Further, the government cites *United States v. Tagg*, which explains that "constitutional claims are reviewed *de novo*." 572 F.3d 1320, 1325 (11th Cir. 2009).

The government also does not dispute that PLRA frivolity review asks whether the claims at issue have "arguable merit." *See Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). However, despite acknowledging that Johnson's claims were dismissed as frivolous, Gov't Br. 9, the government argues solely under the 12(b)(6) standard. *See id.* at 38 (urging affirmance "for failure to state a claim").

Because Johnson's claims were dismissed as frivolous, the issue before this Court is *not* whether Johnson stated a claim—it is "'simply whether the legal theories raised in [his] complaint are indisputably meritless' or 'lacking an arguable basis in law.'" Opening Br. 6 (quoting *Battle v. Central State Hosp.*, 898 F.2d 126, 129 (11th Cir. 1990)). The Court routinely applies this standard to reverse frivolity dismissals. *See, e.g.*, *Hyland v. Parker*, 163 F.App'x 793, 799 (11th Cir. 2006); *Sultenfuss v. Snow*, 894 F.2d 1277, 1279 (11th Cir. 1990). The government identifies no contrary authority.

---

[5] The government also recognizes that the district court's frivolity dismissal was on legal, not factual, grounds. Gov't Br. 9.

In any event, Johnson's claims satisfy both standards. They have arguable merit and state plausible causes of action.

## A.    Johnson's bill-of-attainder claim has arguable merit.

The hallmarks of a bill of attainder are "specification of the affected persons, punishment, and lack of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 846-67 (1984). The government focuses exclusively on the second characteristic, asserting only that § 5313 is not punitive. Gov't Br. 33-37. But it is both arguable and plausible that § 5313 exacts punishment.

Again, courts consider three guideposts in determining whether a statute inflicts punishment: "(1) whether [it] falls within the historical meaning of legislative punishment; (2) whether[], viewed in terms of the type and severity of burdens imposed, [it] reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish." *Selective Serv. Sys.*, 468 U.S. at 852 (quotations omitted).

As to the first guidepost, Johnson explained that § 5313 resembles punitive confiscation of property because service-connected disability compensation is an earned, statutorily-mandated right that has been integral to the preservation of our country since the founding. Opening Br. 15-17. The government addresses none of those points, relying instead on *Hall v. West*, 217 F.3d 860, 1999 WL 1072252 (Fed. Cir. 1999)—an unpublished opinion. But *Hall* simply held that service-connected

18

disability compensation is not a *contractual* property right, and it also repeats the blanket assertion that "suspension of a noncontractual benefit cannot be considered a punishment," *id.* at \*1—which misconstrues Supreme Court precedent, as Johnson has already shown. Opening Br. 31-32. Regardless, § 5313 "need not fit within the historical category of punishment to be considered such." *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 351 (2d Cir. 2002) (citing *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 475 (1977)).

As for the second and third guideposts, the government cites several legislative-history statements that purportedly disclose nonpunitive purposes for § 5313. Gov't Br. 35-36. But § 5313 cannot "escape unconstitutionality merely because the Government can assert purposes that superficially appear to be nonpunitive." *Foretich v. United States*, 351 F.3d 1198, 1223 (D.C. Cir. 2003). Instead, those asserted purposes "must be sufficiently clear and convincing," "rational," "fair," and "legitimate." *Id.* at 1221-22, 1229 (quotation omitted) (citing, *inter alia*, *Selective Serv. Sys.*, 468 U.S. at 854, and *Nixon*, 433 U.S. at 473, 476).

Here, the legislative history does not reveal any nonpunitive purpose that satisfies those criteria. The government relies on certain statements from Congressmen Montgomery and Wylie. Gov't Br. 35. But Johnson quoted those very same statements, Opening Br. 24 & n.10, because they reveal that the nonpunitive purposes articulated by § 5313's supporters—eliminating duplicative spending on

19

individuals whose needs are already provided for—rested on the false premise that

the service-connected disability program is needs-based. *Id.* at 24-27. That premise

is false because the program compensates veterans based solely on their disability

level; it does *not* "compensate a veteran based on his or her individual need for room

or board or any other expenses." *Id.* (quotation omitted); *see also Latham v. Brown*,

4 Vet.App. 265, 267 (1993) (noting that this compensation is "not based on need").

Consequently, the needs-based rationale for stripping service-connected

disability compensation cannot be squared with the statutory function of that

compensation. It is not rational—or fair—to cut someone's benefits on the purported

ground that he doesn't "need" them, when the benefits weren't meant to compensate

for need in the first place. However, when the Director of Veterans Benefits raised

this incongruity in Congress, Representative Montgomery—§ 5313's principal

sponsor—responded by highlighting recent "publicity" and insisting that "[w]e can't

let a man in prison who has done horrible, horrible things, draw $800 a month."[6]

That confirms punitive intent.

The government references other legislative history supposedly showing an

intended purpose of limiting contraband in prisons. Gov't Br. 36. But as discussed,

§ 5313 does nothing to limit contraband because prisons operate on cashless

---

[6] *Review of Compensation and DIC Programs: Hearings Before the Subcomm. on Comp., Pension, Ins., & Mem'l Aff., H. Comm. on Veterans' Aff.*, 96th Cong. 26 (1980).

#5106812v1

systems. Opening Br. 30, 48-49. The government's only rejoinder is to claim that Johnson's position is based "solely…on his personal circumstances." Gov't Br. 31. Not so. Johnson alleged that modern prisons "'ubiquitously operate as a cashless system' where such compensation goes to 'prisoner debit cards.'" Opening Br. 48 (quoting DE6). Johnson's factual allegations must be credited at this stage.[7]

Moreover, that § 5313 strips only *some* incarcerated veterans (*i.e.*, felons) of compensation casts doubt on the contraband-prevention rationale. Opening Br. 49. And even if "[o]ne of the reasons" for enacting § 5313 was to "prevent[]" contraband-related misconduct, "that does not make [it] any less punishment." *United States v. Brown*, 381 U.S. 437, 458 (1965). "[P]unishment…may include inflicting deprivations on some blameworthy or tainted individual in order to prevent his future misconduct." *Nixon*, 433 U.S. at 476 n.40. Accordingly, this contraband-prevention rationale is not a "wholly non-punitive[8] purpose" that can "justify" § 5313. *Consol. Edison*, 292 F.3d at 351.

---

[7] Even if Johnson's allegations about prisons being cashless could somehow turn any part of his complaint into an as-applied—rather than facial—challenge, jurisdiction would still be proper here. The VA did not "actually decide[]" the constitutionality of § 5313—whether facial or as-applied to Johnson—"in the course of a benefits proceeding." *Broudy*, 460 F.3d at 114; *see supra* at 10-12.

[8] The government depicts *Flemming v. Nestor* as suggesting that Congress must have a "wholly" punitive intent for a statute to constitute punishment. Gov't Br. 36. That strays too far from *Flemming*'s text. *See* 363 U.S. 603, 620 (1960) ("Inferences drawn from the omission of those grounds cannot establish…that Congressional concern was wholly with the acts leading to deportation, and not with the fact of deportation."). Moreover, courts have applied the exact opposite

Although the legislative history recites hostile epithets towards prisoners—
"animals," "parasites," and the "least deserving segment of society," Opening Br.
21-23 (cleaned up)—the government tries to dismiss them as "isolated statements."
Gov't Br. 36. But these statements are similar to the attacks that supported a bill-of-
attainder finding in *United States v. Lovett*. *See* 328 U.S. 303, 308-09 (1946)
("irresponsible, unrepresentative, crackpot…[and] unfit to hold a government
position" (quotations omitted)).

The government's reliance on Social Security decisions is futile because those
cases endorse needs-based justifications for cutting benefits to prisoners—which,
again, do not apply to service-connected disability compensation. *See, e.g.*, *Davis v.*
*Bowen*, 825 F.2d 799, 801 (4th Cir. 1987) (suspending benefits "rationally
promotes" the "goal of conserving scarce social security resources *where a*
*prisoner's basic economic needs are provided from other public sources*" (emphasis
added)).

More importantly, the government's preferred Social Security case—*Wiley v.*
*Bowen*—*confirms* that § 5313 exacts punishment. *Wiley* involved an *ex post facto*
challenge to 42 U.S.C. § 402(x)—the statute that stripped incarcerated felons of
Social Security benefits. 824 F.2d 1120, 1121 (D.C. Cir. 1987). Like here, the

---

approach. *See Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1263 (3d Cir. 1996)
(statute constitutes "punishment" for bill-of-attainder purposes if it cannot "be
explained *solely* by a remedial purpose" (emphasis added)).

#5106812v1

government offered a needs-based justification: § 402(x) was "a cost-saving measure that eliminates payment of retirement benefits to individuals whose basic needs…are already provided at the public's expense." *Id.* at 1122. However, the D.C. Circuit was "quite suspicious that [Congress's] intent was punitive" because—like § 5313— § 402(x) "sing[led] out felons" and did not apply to any other groups whose needs were already publicly financed—*e.g.*, "incarcerated misdemeanants." *Id.*; *see* Opening Br. 27-28. Moreover, *based on some of the same legislative history highlighted here*, the D.C. Circuit observed that § 402(x) "reflect[ed] a punitive motivation." *Wiley*, 824 F.2d at 1122.

*Wiley* concluded that § 402(x) "c[a]me about as close as possible to the line of unconstitutionality without actually crossing it." *Id.* Under *Wiley*'s analysis, § 5313 is more than arguably punitive. Section 5313 carries all the indicia of punishment from *Wiley*. But on top of that, § 402(x)'s needs-based justification is inapplicable to service-connected disability compensation, and there is additional legislative history for § 5313 showing that, when confronted with that issue, § 5313's principal sponsor could only resort to emphasizing the "horrible, horrible things" that prisoners have done. This pushes § 5313 well across the "line of unconstitutionality" into prohibited punishment. *Id.*

23

B.    **Johnson's equal-protection claim has arguable merit.**

   i.    **The government cannot dispute Johnson's arguments grounded in Supreme Court precedent.**

The government does not address—much less dispute—Johnson's showing that he adequately pled an equal-protection claim under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). *Compare* Opening Br. 34-38, *with* Gov't Br. 28-33.

The government ignores Johnson's other arguments applying Supreme Court rational-basis precedent. As Johnson detailed, § 5313 is irrational because it reflects Congress's bare desire to harm a politically unpopular group, which serves no legitimate government interest. *See* Opening Br. 38-41 (applying *U.S. Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973)). Congress enacted § 5313 to harm incarcerated, service-disabled veterans in response to public uproar over felons receiving SSDI benefits. *See id*.

Likewise, Johnson detailed how § 5313 improperly curtails an important right—service-connected disability compensation earned for physical sacrifice to our country. *See* Opening Br. 41-44 (applying *Plyler v. Doe*, 457 U.S. 202, 221-230 (1982)). Such legislation "'can hardly be considered rational unless it furthers some substantial goal of the State.'" *Id.* Johnson even supplied history supporting the importance of service-connected disability compensation to our nation, from the founding to today. *See, e.g.*, Opening Br. 41-44 (citing *Plyler* and *Washington v.*

*Glucksberg*, 521 U.S. 702, 721 (1997)). Johnson also cited Supreme Court precedent holding that Congress cannot merely point to cost-cutting to rationalize stripping service-connected disability compensation to harm disabled-veteran felons. *See* Opening Br. 47-48 (citing *Moreno* and *Plyler*).

The government does not address any of these authorities. Instead, the government tries to recast Johnson's arguments as urging "strict scrutiny." *See* Gov't Br. 30 (citing "Pl.'s Br. 39-44"). But Johnson did not invoke strict scrutiny. He applied rational-basis authorities—*Moreno*, *Plyler*, and *Olech*—to this analogous case. *See Moreno*, 413 U.S. at 534 ("classification must rationally further some legitimate governmental interest"); *Plyler*, 457 U.S. at 223-24 ("determining the rationality of [statute]" in light of importance of right); *Olech*, 528 U.S. at 564 ("rational basis"); *see also Washington*, 521 U.S. at 728 (rational-basis review).

Similarly, the government is incorrect that Johnson seeks to establish a "fundamental right." Gov't Br. 30. Johnson disclaimed any "fundamental" right, contending only that service-connected disability compensation is an "important right" under *Plyler*. Opening Br. 35. The government again cites the Federal Circuit's unpublished opinion in *Hall*, 1999 WL 1072252, but *Hall* does not address

Johnson's arguments.[9] *Webster v. Fall*, 266 U.S. 507, 511 (1925) (cases do not stand for principles not "suggested or decided").

The government then asserts that inmates are not a "suspect class." Gov't Br. 30-31. Johnson never contended they were. Section 5313 was enacted to harm an unpopular—not suspect—group. *See* Opening Br. 17-28, 39-41, 47-52.

The government cannot explain why Johnson's equal-protection arguments lack merit. The Court should reverse and remand on these bases alone.

### ii.    The government's other arguments do not nullify the arguable merit here.

The government primarily contends that § 5313 serves a legitimate interest in avoiding duplication of subsistence payments—*i.e.*, payments "intended 'to help disabled veterans maintain…a minimum standard of living.'" Gov't Br. 29 (quoting *Hall*, 1999 WL 1072252, at *2). But the government fails to explain how that supplies a rational basis when, as discussed, service-connected disability compensation is simply *not* a subsistence benefit, and is purposely duplicative. *See, e.g.*, Opening Br. 19 (payment "'for loss of quality of life'"); *id.* at 25-26 (not a "'direct needs benefit'"); *id.* at 45-47 (intentionally duplicative of other payments). At best, Congress acted arbitrarily by stripping service-connected disability

---

[9] *Lynch v. United States* is inapposite. 292 U.S. 571, 577 (1934). *Lynch* involved insurance contracts that pre-date the statutes at issue. Moreover, *Lynch* did not decide the importance of service-connected disability compensation or the rational bases for stripping it.

compensation on a purported needs-based rationale that bears no connection to the structure and function of that compensation. *Moreno*, 413 U.S. at 536 (rejecting classification that had "nothing to do with" stated purpose of law). But more likely, Congress acted out of "bare…desire to harm a politically unpopular group," which "cannot constitute a legitimate governmental interest." *Id.* at 534; Opening Br. 39-41.

The government's reliance on Social-Security-stripping cases is unavailing for the same reasons. Those cases generally justify cutting Social Security benefits on the premise that they "are designed to satisfy certain baseline economic needs" that "are already met" during incarceration. *Zipkin v. Heckler*, 790 F.2d 16, 18-19 (2d Cir. 1986); *see Buccheri-Bianca v. Heckler*, 768 F.2d 1152, 1154-55 (10th Cir. 1985) ("goal of the social security program [is] to alleviate economic hardship," and "a confined felon…has no need for a continuing source of social security income"). But again, that premise does not apply to service-connected disability compensation. Moreover, such compensation is distinct from Social Security in many ways, including: (1) it compensates for loss of quality of life incurred in sacrifice to our nation; (2) it is paid regardless of other government benefits; and (3) it is not merely a social-welfare benefit. *See* Opening Br. 17-28, 39-49. *Andujar v. Bowen* is not instructive; its two-sentence analysis does not address Johnson's arguments or service-connected disability compensation. 802 F.2d 404, 405 (11th Cir. 1986).

The government also misunderstands Johnson's challenge to the classifications in § 5313. Johnson does not dispute that Congress can act incrementally. But Johnson showed that Congress singled out incarcerated veteran felons to punish an unpopular group—a conclusion underscored by Congress's choice of an otherwise arbitrary classification, the many exceptions that Congress inserted, the unsound rationalizations offered to support the statute, and the unmistakable animosity towards prisoners in the legislative record. *See* Opening Br. 47-52. As the Supreme Court has held, "a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources." *Plyler*, 457 U.S. at 227. The government's cited precedent does not hold otherwise. *Williamson v. Lee Optical of Okla.*, 348 U.S. 483, 489 (1955) (government can regulate eyeglass business by requiring optician involvement); *Clark v. Riley*, 595 F.3d 1258, 1264 n.8 (11th Cir. 2010) (universities not obligated to have same retirement ages); *Jones v. Gov. of Fla.*, 975 F.3d 1016, 1034 (2020) (en banc) (applying rational-basis review where "no evidence" of "any kind of animus" to felons).

Finally, the government attempts to justify § 5313 on contraband-prevention grounds. As discussed, that justification fails because § 5313 does nothing to limit contraband in prisons. *Supra* at 20-21. Moreover, the government fails to address

#5106812v1

Johnson's other arguments for why § 5313 is not rationally related to limiting contraband. Opening Br. 49.

Johnson has provided an arguable and plausible basis for his constitutional claims. Reversal and remand is warranted.

Respectfully submitted this 20th day of December, 2024.

<div style="margin-left:40%">

*/s/ Jeffrey W. Chen*
Patrick C. Fagan
Georgia Bar No. 387016
fagan@bmelaw.com
Jeffrey W. Chen
Georgia Bar No. 640207
chen@bmelaw.com
BONDURANT MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309-3417
(404) 881-4100

*Attorneys for Appellant-Plaintiff*
*Donald F. Johnson*

</div>

29

## CERTIFICATE OF COMPLIANCE

This reply brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this reply brief contains a total of 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f) and 11th Cir. R. 32-4.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on December 20, 2024.


*/s/ Jeffrey W. Chen*

#5106812v1

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Counsel for all parties will be served with the foregoing document by the Court's CM/ECF System.

*/s/ Jeffrey W. Chen*

CERTIFICATE OF SERVICE